IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| ANTHONY J. PRINCE, ) | |
| ) | |
| Defendant/Movant, ) | |
| ) | |
| v. ) | CASE NO. CV-03-J-8026-W |
| ) | CR-01-J-0365-W |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION

Defendant Anthony J. Prince (hereinafter "the defendant" or "Prince") has filed a motion pursuant to Title 28, United States Code, Section 2255 wherein he claims that his guilty plea in this case was not knowingly, intelligently, and voluntarily entered, and that it lacked a sufficient factual basis. (Doc. 27). He also claims that his counsel was ineffective in that he provided deficient legal guidance. (*Id.*). For the reasons stated below, the court finds that the motion is due to be denied.

## BACKGROUND

On August 1, 2001, a grand jury for the Northern District of Alabama returned a

two-count indictment against the defendant. (Ex. A).[1] Count One charges the defendant with participating in a conspiracy to distribute in excess of 50 grams of

---

[1] The exhibits are located at document 31.

cocaine base ("crack"), a controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(iii) and § 846.  Count Two charges the defendant with distributing in excess of 50 grams of crack, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A).  The defendant agreed to plead guilty to Count One in exchange for the United States agreeing to dismiss Count Two.  (Ex. B).  The United States also agreed to recommend a three-level reduction in his Sentencing Guidelines calculation for acceptance of responsibility and that he be sentenced at the low end of the applicable sentencing range.  (Ex. B at 1).  The United States further agreed to afford the defendant an opportunity to cooperate with law enforcement authorities in an effort to render substantial assistance pursuant to Sentencing Guidelines § 5K1.1 and 18 U.S.C. § 3553(e) and to inform the court of his cooperation.  (*Id*.).  The agreement set forth the factual basis for the plea.  It specified that the defendant would plead guilty to the offense of conspiring to distribute more than 50 grams of crack cocaine in the Tuscaloosa and west Alabama areas.  (*Id*. at 2).  Lastly, the agreement provided that the defendant waived his right to appeal all non-jurisdictional issues and the right to seek post-conviction relief pursuant to 28 U.S.C. § 2255.  (*Id*. at 7).

    A guilty plea hearing was held on December 20, 2001.  (Ex. C).  The court read Count One of the indictment to the defendant.  (*Id*. at 6).[2]  The court then

---

[2] The court specifically informed the defendant that he was pleading guilty to possession with intent to distribute "in excess of *five* grams of a mixture and substance containing a detectable amount of cocaine base, crack. . . ."  (Ex. C at 6 (emphasis added)).  Counsel for the United States corrected the court's reading, noting that the indictment charged the defendant

2

outlined for the defendant the maximum penalties (*id*. at 7), asked if his lawyer had explained to him the elements of the offense and the applicable punishment (*id*.), asked if he understood that the Sentencing Guidelines applied to his sentence in this case (*id*. at 8), and then proceeded to ascertain the terms of the plea agreement (*id*. at 8-9). The court specifically asked the defendant if he understood that, pursuant to the plea agreement, he waived any right to appeal the sentence within the applicable sentencing guidelines and also waived the right to file a collateral challenge. (*Id*.). He responded that he did understand those provisions. (*Id*. at 9). The Assistant United States Attorney provided the court and the defendant with the following factual basis for the plea:

> Your honor, the government would expect to show that, between the fall of 1995 and May of 1997, within the Northern District of Alabama, more particularly in the Tuscaloosa County area of the Northern District of Alabama, that Anthony Prince conspired with several individuals to bring *crack* cocaine into the Tuscaloosa County area. And that it was coming for an Atlanta, Georgia supplier to deliver the cocaine base by inserting the *crack* cocaine into washing detergent boxes, and then it would be brought into Tuscaloosa County, and then it would be distributed from there, and the amount of the cocaine was in excess of fifty grams during the time of the conspiracy.

(*Id*. at 14 (emphasis added)). The defendant affirmed that the prosecutor's statement was an accurate rendition of what happened in his case. (*Id*.). The court accepted his plea of guilty. (*Id*.). The court afforded the defendant one hundred

---

with the possession of "in excess of *fifty* grams." (*Id*. (emphasis added)). The court corrected itself, stating, "[I]t says in the indictment in excess of fifty grams of a mixture and substance." (*Id*.).

3

and twenty days to cooperate with the government. (*Id*. at 15). The court then held an off-the-record discussion between the parties and the United States Probation Officer. (*Id*. at 15-16). At the conclusion of the discussion, the court stated that the parties agreed that the defendant was previously made aware of the possible sentencing guidelines, "and that they would be the maximum with respect to the amount of *crack* that he was alleged to have been involved with." (*Id*. at 16 (emphasis added)).

A presentence investigation report was ordered and prepared by the United States Probation Office. (Ex. D). The report recommended that the court find that the facts and circumstances warranted a total offense level of 33 and a criminal history category of II in this case. (*Id*. at 6, 8).

A sentencing hearing was held on July 8, 2002. (Ex. E). The court adopted the factual statements contained in the presentence report, including the specific findings that the offense level was 33 and the criminal history category was II, resulting in a Sentencing Guidelines imprisonment range of 151 to 188 months, with a supervised release period of five years, and a fine range of $17,500 to 4 million dollars. (*Id*. at 2). The defendant's counsel requested that the court grant a downward departure from the applicable guideline range even though the United States would not move for such a departure. (*Id*. at 3-7). The court declined, stating that it found no reason to depart from the applicable sentencing range. (*Id*.

at 8).  The defendant was sentenced, *inter alia*, to 151 months in prison.  (*Id*. at 8-9).

The defendant filed the present motion to vacate, set aside, or correct his sentence on or about June 23, 2003.  The relevant issues have been addressed by the parties.

## DISCUSSION

The defendant asserts that his guilty plea was not knowingly and voluntarily due to counsel's ineffectiveness in (1) failing to inform him of the penalties applicable to offenses involving crack cocaine, (2) failing to make the prosecution prove that the substance involved in the offense was crack cocaine, (3) failing to file an appeal, and (4) failing to secure and verify the contents of the presentence investigation report.  The United States asserts that all of these issues are barred from review because the defendant knowingly and voluntarily waived his right to pursue relief in a § 2255 proceeding as a part of his plea agreement and his guilty plea. (Doc. 31 at 6).  Additionally, the United States asserts that the claims are due to be denied on the merits.  (*Id*. at 8-17).

### Procedural Issues

### Waiver

The defendant agreed to waive his right to seek relief pursuant to § 2255 when he entered his guilty plea in this case.  That waiver first is evidenced by the

plea agreement. (Ex. B at 7). Additionally, it is evidenced by his acknowledgment of it during his guilty plea hearing. (Ex. C at pp. 6-8). During the plea colloquy, the court and the Assistant United States Attorney made specific reference to the waiver when informing the defendant of the specifics of the plea agreement. (*Id*. at 9). The defendant, who was under oath, indicated that he understood that the agreement included the waiver. (*Id*.). Finally, at sentencing, the court once again made certain that he understood the waiver was a part of the agreement and, if he believed that it was not enforceable, he should present that issue to the appellate court. (Ex. E at 11-12). The defendant did not appeal his conviction, sentence, or the enforceability of the waiver after he was sentenced.

As asserted by the United States, the Eleventh Circuit Court of Appeals has held that an appeal waiver provision in a plea agreement is enforceable if the waiver is made knowingly and voluntarily. *United States v. Weaver,* 275 F.3d 1320, 1333 (11th Cir. 2001), *cert. denied*, 536 U.S. 961, 122 S. Ct. 2666, 153 L. Ed. 2d 840 (2002); *United States v. Pease,* 240 F.3d 938, 942 (11th Cir.), *cert. denied*, 534 U.S. 967, 122 S. Ct. 381, 151 L. Ed. 2d 290 (2001). Similarly, this court finds no distinction between a waiver of appeal and a waiver of collateral review, so long as the United States demonstrates that the waiver was made knowingly, intelligently, and voluntarily. *See Allen v. Thomas,* 161 F.3d 667 (11th Cir. 1998). The Eleventh Circuit views a waiver as a contract between the United

States and a criminal defendant. It has stated:

> [A]mong the considerations that a defendant may offer as part of such a contract is waiver of his right to appeal, provided that the waiver is made knowingly and voluntarily. *See United States v. Bushert,* 997 F.2d 1343, 1350 (11th Cir. 1993). In this case, [the appellant's] waiver was clearly knowing and voluntary – he was specifically questioned by the district court regarding the waiver of his right to appeal. *See United States v. Buchanan,* 131 F.3d 1005, 1008 (11th Cir. 1997). The plea agreement is therefore enforceable and would appear to bar this appeal.

*United States v. Howle*, 166 F.3d 1166, 1168 (11th Cir. 1999).

The record demonstrates that the defendant's assent to the terms of his plea agreement, including his waiver of his right to appeal and to pursue relief in a § 2255 motion, was knowingly, intelligently, and voluntarily made. (Ex. C at 9). The defendant was specifically informed about the waiver in his agreement. (*Id.*). Additionally, the record demonstrates that the defendant possessed the ability to understand his decision to waive these rights. He graduated high school and attended four semesters of college. (Ex. D at ¶ 32). Accordingly, the defendant's motion is barred from review by this court.

## The Merits

For completeness, the court will also address the merits of the defendant's claims. He raises four ineffective assistance of counsel allegations: (1) his guilty plea was not knowing and voluntary due to counsel's failure to inform him of the penalties applicable to offenses involving crack cocaine; (2) counsel failed to

7

make the government prove that the substance involved in the offense was crack cocaine; (3) counsel failed to file an appeal; and, (4) counsel failed to secure and verify the contents of the presentence investigation report.  The United States asserts that the record refutes the defendant's claims.  (Doc. 31 at 9).

As stated by the United States in its response, to succeed on a claim of ineffective assistance of counsel, the defendant must prove both that his counsel's performance was deficient and that the deficient performance prejudiced his case.  *Strickland v. Washington,* 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *see also Bell v. Cone,* 535 U.S. 685, 697-98, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002) (reaffirming the *Strickland v. Washington* standard for reviewing ineffective assistance of counsel claims); *Caderno v. United States*, 256 F.3d 1213, 1217 (11th Cir. 2001) (applying two-part test of *Strickland v. Washington*), *cert. denied,* 534 U.S. 1167, 122 S. Ct. 1185, 152 L. Ed. 2d 126 (2002).  More specifically, Prince must show that (1) identified acts or omissions of counsel fell below an objective standard of reasonableness, and (2) that his counsel's alleged errors or omissions resulted in prejudice to him to such an extent that, without counsel's alleged errors or omissions, there is a reasonable probability that the outcome of the proceeding would have been different.  *Yordan v. Dugger,* 909 F.2d 474, 477 (11th Cir. 1990).

In analyzing counsel's performance under the performance prong of

*Strickland*, this court must presume that the conduct of counsel was reasonable, *Yordan v. Dugger,* 909 F.2d at 477.  A "[d]efendant must prove deficient performance by a preponderance of competent evidence, and the standard is 'reasonableness under prevailing professional norms.'" *Gallo-Chamorro v. United States*, 233 F.3d 1298, 1303-04 (11th Cir. 2000) (footnotes omitted).  The Eleventh Circuit has described a defendant's burden with regard to the deficient performance prong of an ineffective assistance of counsel claim as follows:

> . . . . Because there is such a wide range of constitutionally acceptable performance, a petitioner seeking to rebut the presumption of adequate performance must bear a heavy burden:
>
> The test has nothing to do with what the best lawyers would have done.
> Nor is the test even what most good lawyers would have done. We ask
> only whether some reasonable lawyer at the trial could have acted, in the
> circumstances, as defense counsel acted at trial. . . .  We are not interested
> in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.
>
> . . . Thus, in order to show that counsel's performance was unreasonable, the
> petitioner must establish that *no competent counsel would have taken the         action that his counsel did take. . . .*

*Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (internal citations omitted).

The Eleventh Circuit has described a defendant's burden in demonstrating

that his counsel's deficient performance prejudiced his case as "high," noting that it is not enough to show that any errors had some conceivable effect on the outcome of the proceeding. *Robinson v. Moore*, 300 F.3d 1320, 1343-44 (11th Cir. 2002), *cert. denied*, 540 U.S. 1171, 124 S. Ct. 1196, 157 L. Ed. 2d 1224 (2004). To succeed on the ineffective assistance of counsel claim, the defendant must show that, but for counsel's unprofessional errors, the outcome of the proceeding would have been different. Further, "[i]t is well established that a habeas petitioner must demonstrate both deficient performance and prejudice, and that a failure to demonstrate either prong constitutes a failure to demonstrate ineffective assistance of counsel." *Bottoson v. Moore*, 234 F.3d 526, 532 (11th Cir. 2000), *cert. denied*, 534 U.S. 956, 122 S. Ct. 357, 151 L. Ed. 2d 270 (2001); *accord Robinson v. Moore*, 300 F.3d at 1343.

### Counsel's Purported Failure to Inform the Defendant of the Applicable Penalties

The defendant first argues that his plea was not made knowingly and voluntarily because counsel misrepresented to him the sentence he would receive in exchange for his guilty plea. He specifically charges that counsel did not investigate or object to the charge that he possessed "crack" at sentencing, and that counsel failed to inform him of the penalties for distributing "crack," as opposed to other forms of cocaine. (Doc. 27 at 5). The sum and substance of this contention actually challenges the adequacy of his guilty plea hearing.

The Eleventh Circuit has held that FEDERAL RULE OF CRIMINAL PROCEDURE 11 has three main objectives: "(1) ensuring that the guilty plea is free from coercion; (2) ensuring that the defendant understands the nature of the charges against [him]; and (3) ensuring that the defendant is aware of the direct consequences of the guilty plea." *United States v. Camacho*, 233 F.3d 1308, 1314 (11th Cir. 2000). The court is satisfied that the defendant understood the nature of the charge and the possible penalties. As noted above, the defendant completed at least one year of college and he informed the court that he could read, write, and understand English. (Ex. C at 4).

Nothing in the record supports a contrary conclusion. First, the indictment in this case specifically refers to his distribution of crack cocaine. (Ex. A). Second, the signed plea agreement, which includes the factual basis for the plea, specifically refers to "cocaine base, 'crack.'" (Ex. B at 2). The defendant also acknowledges on the agreement that he read the document, discussed it with his attorney, and agreed with its provisions. (*Id*. at 8). Third, the court and counsel for the United States both referenced "crack" cocaine during the plea hearing. By way of example, the court read Count One of the indictment to the defendant, referencing "cocaine base, 'crack'" (ex. C at 6), and counsel for the United States referenced the term "crack" when he articulated the factual basis for the plea (*id*. at 14). Fourth, the penalties applicable to Count One were explained to the

11

defendant. (*Id*. at 7, 15-16). Fifth, the defendant did not indicate any confusion during his Rule 11 hearing concerning the type of controlled substance involved or the applicable penalties. In sum, the court finds that the defendant understood the charge and the potential penalties. The record does not support his contention that counsel was ineffective. Additionally, the defendant has not demonstrated any prejudice to warrant relief.

### Counsel's Purported Ineffectiveness Because He Failed to Make the United States Prove That the Involved Substance Was Crack Cocaine

The defendant's second ineffective assistance of counsel claim asserts that counsel did not make the prosecution prove that the involved substance was "crack" cocaine, as opposed to other forms of cocaine. The record demonstrates that the defendant acknowledged during his plea hearing that his counsel previously had outlined the elements of his crime, and, informed him of what the United States must prove in order to convict him. (*Id*. at 7). The defendant was also informed by the court that, by pleading guilty, he was giving up the right to have the United States submit any type of proof in his case. (*Id*. at 10-11). Thus, it cannot be said in the present case that counsel's performance was deficient. Additionally, the defendant has not demonstrated any prejudice. There is no evidence that the substance at issue was not, in fact, crack cocaine as that term is

defined in the Sentencing Guidelines.  This claim is due to be denied.

### Counsel's Failure to Appeal

The defendant next asserts that counsel was ineffective in failing to appeal his conviction and sentence.  (Doc. 27 at 9-10).  As previously stated, the defendant made a knowing waiver of his right to file an appeal in his case.  (Ex. B at 7; Ex. C at 9; Ex. E at 11-12).  The court informed the defendant that if he believed his waiver was not enforceable he should challenge the enforceability of the waiver in the appellate court.  (Ex. E at 12).  The defendant did not file any appeal.  Even if he had challenged the enforceability of the waiver provision with the Eleventh Circuit Court of Appeals, he has not shown that he would have prevailed.  Under the circumstances he cannot demonstrate the requisite deficiency and prejudice to warrant any relief.

### Counsel's Purported Failure to Secure and Verify the Contents of the Presentence Investigation Report

The defendant's last allegation of ineffective assistance asserts that his counsel failed to confer with him during the presentence period.  (Doc. 27 at 11).  As noted by the United States, the substance of this complaint is an allegation that counsel did not have a copy of the presentence report before sentencing, and therefore, could not make any valid objections to the contents of the report.  (Doc. 27 at 11-12).  In support of this claim, the defendant attached to his § 2255 motion

two affidavits submitted by Lisa Hill.  (Doc. 27, Attachment B & C).  Hill asserts that, on May 12, 2003, a little over a month before the defendant's motion was filed, while meeting with United States Probation Officer Erika Young, the defendant's counsel, Katheree Hughes, Jr., stated that he had not seen the presentence investigation report or the laboratory analysis report associated with Prince's case.  (*Id.*, Attachment B & C).  Hill also stated that Hughes did not understand the role of the drug quantity table in the calculation of the offense level applicable to the defendant.  (*Id.* at Attachment C).

The defendant further enumerates various contentions concerning the harms that resulted from counsel's alleged failure to review his presentence investigation report.  (*Id.* at 11-12). These allegations are as follows:

> (1) counsel should have known that the report must be disclosed at least ten days prior to the date set for sentencing;
>
> (2) counsel violated his right to due process by allowing Prince to be sentenced on the basis of false information;
>
> (3) counsel should have know that the Government must prove facts in the presentence report by a preponderance of the evidence;
>
> (4) counsel should have known that the Government could not enhance a sentence without proving that an offense involved "crack" cocaine;
>
> (5) counsel failed to make the Government prove by a preponderance of the evidence that the offense involved "crack";
>
> (6) counsel never reviewed the lab analysis report; and,

>   (7) counsel should have known that this court violated Rule 32 by failing to inform Prince that an upward departure was contemplated.

(Doc. 27 at 11-12).[3]

In response to the defendant's allegations, the United States submitted an affidavit from his former counsel. (Ex. G). At sentencing, counsel stated that he and the defendant had had the presentence report before sentencing and had at least 35 days to review that report. (Ex. 2). The defendant did not dispute this at that juncture. Counsel further explains in his affidavit that when the defendant's girlfriend, Lisa Hill, requested a copy of the presentence report in connection with the filing of the present § 2255 motion, he determined that his file did not contain a copy of the presentence report. (Ex. G at ¶ 7). He further stated, however, that he specifically recalled reviewing the presentence report on several occasions with the defendant before the sentencing. (*Id*. at ¶ 5).

The court has closely examined the defendant's allegations, the presentence report, and the sentencing transcript and finds that his last claim is also without merit. Although, as cited above, the defendant enumerates various deficiencies associated with counsel's performance concerning the presentence report, none warrant relief. The defendant has failed to show how counsel's performance was deficient and how he was prejudiced as a consequence. There has been no

---

[3] The defendant lists one more challenge to counsel's performance in this claim; however, it is incomprehensible as stated.

showing that the report contained inaccuracies. To the extent that he asserts that it contains "false information and invalid premises," the court finds otherwise. (Doc. 27 at 12). The defendant's conclusory statements are not sufficient. To the extent the defendant's contentions surround the "crack" issue, the court has previously found his challenges to be without merit. To the extent the defendant asserts that he was not properly informed that an upward departure was "contemplated," the court finds that this claim is without merit as no upward departure was considered or imposed. This claim is due to be denied.

## CONCLUSION

For the foregoing reasons, the court finds that the defendant's motion is due to be denied. An evidentiary hearing is not necessary under the circumstances. *See Blackledge v. Allison*, 431 U.S. 63, 73-74, 97 S. Ct. 1621, 52 L. Ed. 2d 136 (1977); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991), *cert. denied*, 502 U.S. 1105, 112 S. Ct. 1199, 117 L. Ed. 2d 439 (1992); *United States v. Laetividal-Gonzalez*, 939 F.2d 1455, 1465 (11th Cir. 1991), *cert. denied*, 503 U.S. 912, 112 S. Ct. 1280, 117 L. Ed. 2d 505 (1992). An order consistent with the court's findings will be entered.

**DONE**, this the 27th day of January, 2005.

_____
INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE

17